# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. HIGHTOWER, | CASE NO. 1:04-cv-06028-OWW-SMS PC |
| Plaintiff, | ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL |
| v. | (Doc. 22) |
| ARNOLD SCHWARZENEGGER, et al., | ORDER DISMISSING AMENDED COMPLAINT, WITH LEAVE TO FILE SECOND AMENDED COMPLAINT WITHIN THIRTY DAYS |
| Defendants. | |
| | (Doc. 21) |
| _____/ | |

I.    <u>Screening Order</u>

Plaintiff Thomas A. Hightower ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on July 29, 2004. On February 24, 2006, the court dismissed plaintiff's complaint, with leave to amend, for failure to comply with Federal Rule of Civil Procedure 8(a). Plaintiff filed an amended complaint on June 28, 2006, and a motion seeking the appointment of counsel on December 20, 2006.

     A.    <u>Motion for Appointment of Counsel</u>

Plaintiff does not have a constitutional right to appointed counsel in this action, <u>Rand v. Rowland</u>, 113 F.3d 1520, 1525 (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). <u>Mallard v. United States District Court for the Southern District of Iowa</u>, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989). However, in certain exceptional

///

1

circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). <u>Rand</u>, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." <u>Id</u>. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. Even if it is assumed that plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This court is faced with similar cases almost daily. Further, at this early stage in the proceedings, the court cannot make a determination that plaintiff is likely to succeed on the merits, and based on a review of the record in this case, the court does not find that plaintiff cannot adequately articulate his claims. <u>Id</u>. For the foregoing reasons, plaintiff's motion for the appointment of counsel shall be denied, without prejudice.

B.    <u>Screening Requirement</u>

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).

"Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

    C.    Plaintiff's Federal Claims[1]

        1.    Defendants Cobbs, Diaz, Cotes, Duvall, Adams, Rianda, and Grannis

            a.    Retaliation Claim

Plaintiff alleges that defendants Cobbs and Diaz intentionally kept plaintiff, a Level III inmate, at a level IV prison in retaliation against him for filing a lawsuit against staff at Mule Creek State Prison.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

---

[1] Plaintiff's amended complaint is forty-nine typewritten pages long. Where practicable, the court has identified each section of claims by the defendants involved in those claims.

the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff's allegations are sufficient to state a claim against defendants Cobbs and Diaz. Fed. R. Civ. P. 8(a).  However, plaintiff's conclusory allegations that defendants Cotes, Duvall, Adams, Rianda, and Grannis also retaliated against him is insufficient to give rise to a claim.  It is unclear what actions these defendants did or did not take which led to the violation of the plaintiff's rights. Further, at least some of these defendants address and resolve inmate appeals.  As plaintiff was already informed by the court in its order of February 24, 2006, involvement in the resolution of an inmate's appeal, alone, does not provide a basis upon which to impose liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

### b.    Conspiracy Claim

Plaintiff alleges that defendants Cobbs, Diaz, Cotes, Duvall, Adams, Rianda, and Grannis conspired to retaliate against him.  In the context of conspiracy claims brought pursuant to section 1983, such a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants."  Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

Plaintiff has not alleged any facts supporting the existence of a conspiracy between defendants.  Accordingly, plaintiff's conspiracy claim is not cognizable.

### c.    Denial of Access to the Courts Claim

Plaintiff alleges that defendants Cobbs, Diaz, Cotes, Duvall, Adams, Rianda, and Grannis interfered with his right of access to the courts by delaying resolution of plaintiff's inmate appeals. Plaintiff alleges summary judgment was granted against him as a result.

Inmates have a fundamental constitutional right of access to the courts. <u>Lewis v. Casey</u>, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177 (1996). The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. <u>Id</u>. at 354, 2181-82. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). <u>Christopher v. Harbury</u>, 536 U.S. 403, 412-15, 122 S.Ct. 2179, 2185-87 (2002). For backward-looking claims such as that at issue here, plaintiff "must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." <u>Phillips v. Hust</u>, No. 04-36021, 2007 WL 446593, at *3 (9th Cir. Feb. 13, 2007).

The first element requires that plaintiff show he suffered an "actual injury" by being shut out of court. <u>Harbury</u> 536 U.S. at 415, 121 S.Ct. at 2187; <u>Lewis</u>, 518 U.S. at 351, 116 S.Ct. at 2180; <u>Phillips</u>, 2007 WL 446593, at *3. The second element requires that plaintiff show that each involved defendant proximately caused the alleged violation of plaintiff's rights, "[t]he touchstone . . . [for which] is foreseeability." <u>Phillips</u>, 2007 WL 446593, at *3. Finally, the third element requires that plaintiff show he has no other remedy than the relief available via *this* suit for denial of access to the courts. <u>Id</u>. at *6.

Plaintiff's allegations are insufficient to state a claim under section 1983. It is not clear how defendants caused plaintiff to suffer any actual injury with respect to civil case 2:99-cv-02152-EJG-DAD <u>Hightower v. Terhune</u>. It is not at all obvious how delaying a response to an inmate appeal would cause plaintiff to suffer an actual injury with respect to a pending civil action. Further, the time period at issue in the amended complaint was May 2002 through December 2002. (Doc. 21, Amend. Comp., ¶27.) The court takes judicial notice that the motion for summary judgment in plaintiff's civil case was filed on December 26, 2001, and plaintiff opposed the motion on March 25, 2002. Defendants filed a reply on April 3, 2002, and the motion was deemed submitted pursuant to Local Rule 78-231. The Magistrate Judge issued a Findings and Recommendations on May 20, 2002, to which plaintiff objected on May 31, 2002. Defendants' motion for summary judgment was granted on June 20, 2002.

Based on the timing of events and on the fact that plaintiff opposed the motion and filed objections to the Findings and Recommendations, it appears to the court that plaintiff's assertion defendants' caused him to lose on summary judgment by delaying his inmate appeal is disingenuous and exaggerated. Plaintiff fails to state a claim for denial of access to the courts.

### d. Eighth Amendment Conditions of Confinement Claim

Plaintiff alleges that the conditions he was subjected to at the Level IV prison endangered his life and violated the Eighth Amendment. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Plaintiff has not alleged any facts that would support a claim that his life was in danger, that the conditions at the prison otherwise violated the Eighth Amendment, or that defendants Cobbs, Diaz, Cotes, Duvall, Adams, Rianda, and Grannis acted with deliberate indifference to a substantial risk of harm to plaintiff. Plaintiff fails to state a claim for violation of the Eighth Amendment based on his confinement at a Level IV prison.

### 2. Defendants Klarich, Dunn, Santa Cruz, Grannis, Alameida, and Tilton

Plaintiff alleges that he sought medical treatment for chronic liver disease, severe GI distress, spinal disease, and respiratory disease. Plaintiff alleges that defendants Klarich, Dunn, Santa Cruz, Grannis, Alameida, and Tilton refused to provide plaintiff with medical care and treated plaintiff with only cursory, infrequent examinations and over-the counter medications. Plaintiff alleges that defendants' inaction caused him to suffer unnecessarily.

Plaintiff alleges that defendant Klarich ordered plaintiff to be fed in his cell due to severe GI distress. On November 14, 2002, when plaintiff informed defendant Santa Cruz that his subordinates were refusing to order food trays for plaintiff, defendant became angry and stated in writing that it was not custody staff's responsibility to cell feed inmates, berated Dr. White, and stated plaintiff could either starve or pick up and carry his own food tray. Plaintiff alleges defendant Santa Cruz acted in this manner in retaliation against plaintiff for filing an inmate appeal over being denied his in-cell food trays.

Plaintiff alleges that defendants Grannis, Alameida, and Tilton were on notice regarding these unlawful conditions but refused to intervene.

### a. Eighth Amendment Medical Care Claim

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in

a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff's allegation that defendant Santa Cruz refused to honor the medical order for in-cell food trays is insufficient to rise to the level of an Eighth Amendment violation. Plaintiff has not alleged facts supporting a claim that defendant Santa Cruz "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Plaintiff's complaint is devoid of any facts supporting a claim that defendants Klarich, Dunn, Grannis, Alameida, and Tilton acted with deliberate indifference to plaintiff's serious medical needs.

With respect to the defendants involved in responding to plaintiff's inmate appeal, the resolution of an inmate's appeal, alone, is an insufficient basis upon which to impose liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

With respect to defendants Alameida and Tilton, liability may not be imposed on supervisory personnel under section 1983 for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 for supervisory liability,

plaintiff must allege some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983. <u>See</u> <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 168 (1993). The fact that defendants Alameida and Tilton held or hold the position of Director of the California Department of Corrections and Rehabilitation does not provide a basis upon which to impose liability under section 1983. They must be linked to the violation of plaintiff's constitutional rights.

b.    <u>Retaliation Claim</u>

Plaintiff's allegations are sufficient to state a claim against defendant Santa Cruz for retaliating against him, in violation of his First Amendment right to file inmate appeals. However, plaintiff's allegations do not support a claim that defendants Klarich, Dunn, Grannis, Alameida, and Tilton retaliated against him.

3.    <u>Defendants Allison, Doe, Nguyen, Grannis, Deering, Klarich, and Posner</u>

Plaintiff alleges that Drs. Dunn and Medina recommended plaintiff for a liver biopsy, and referral to a liver specialist, a neurologist, a pain management specialist, and a dietician. Plaintiff alleges defendants Allison, Doe, Nguyen, Grannis, Deering, Klarich, and Posner knew plaintiff was not receiving the recommended services, which constituted a risk to plaintiff's health.

Plaintiff alleges that he saw defendant Nguyen on October 15, 2002, but defendant refused to provide any medical care, including providing plaintiff with pain medication at least temporarily until plaintiff could be seen by a pain management specialist. Plaintiff alleges that these health concerns were presented to all defendants and met with deliberate indifference. Plaintiff alleges he would try and address his concerns with facility clinic defendants, who would refer him to the Correctional Treatment Center, which in turn would refer him back to facility clinic staff. Plaintiff alleges that during this time, defendant Doe, a pharmacy staff member, would delay or fail to fill

9

medications for a seizure disorder, breathing disorders, and GI disorders, which endangered plaintiff's health and aggravated his condition. Plaintiff alleges that due to the obvious nature of the medications, defendant Doe acted with deliberate indifference.

Under federal notice pleading standards, plaintiff's allegations are sufficient to give rise to claims for relief under the Eighth Amendment against defendants Nguyen and Doe. However, plaintiff has not alleged sufficient facts to support a claim against defendants Allison, Grannis, Deering, Klarich, and Posner for acting with deliberate indifference to plaintiff's serious medical needs. Some of the defendants appear to have been involved in the inmate appeals process, which is an insufficient basis upon which to impose liability under section 1983.

4. <u>Defendants Barbiero, Allison, McCant, Cotes, Appelbaum, Duvall, Arline, Aguillera-Morrero, Overly, Wu, Poshner, and Does 1-10</u>

Plaintiff alleges that he takes several vital medications, including anti-seizure medication and inhalers for Chronic Obstructive Pulmonary Disease and emphysema. Plaintiff alleges that his medications were renewed on December 4, 2002, but plaintiff had still not received his medications by December 15, 2002, at which time plaintiff filed an inmate appeal due to the danger he might suffer a seizure.

Plaintiff alleges that defendants Barbiero, Allison, and McCant failed to undertake their duties under state law to act within twenty days and obtain plaintiff's medications for him, despite their knowledge of the obvious risk. Plaintiff alleges that defendants delayed the disbursement of the medications until February 27, 2003, in retaliation against plaintiff for his lawsuit against CDCR's medical department.

Plaintiff alleges that defendants Cotes, Duvall, Arline, Aguillera-Marrero, and Barbiero failed to ensure that his Reasonable Request for Disability Accommodations form was resolved within twenty days, in violation of his right to due process, right to petition the court, and the <u>Armstrong</u> Remedial plan. Plaintiff alleges that defendant Appelbaum, a Deputy Attorney General, failed to contact prison officials when notified by the Prison Law Office that defendants' inaction was in violation of the <u>Plata</u> and <u>Armstrong</u> Remedial Plans. Plaintiff alleges that defendants failed to perform their duties in retaliation against him for his ongoing litigation activities.

Plaintiff alleges that on February 20, 2003, defendants Overly and Allison denied plaintiff's request for accommodations, exceeding the twenty-day deadline by one-hundred twenty days. Plaintiff alleges the delay was retaliatory, and violated his right to due process, right of access to the courts, and the Armstrong Remedial Plan.

Plaintiff alleges that he filed an inmate appeal to defendants Barbiero, Wu, Allison, and Poshner regarding the preceding events. Plaintiff alleges that on March 14, 2003, defendants falsely stated on the form that they had examined him personally. Plaintiff alleges defendants acted with deliberate indifference, negligently, and in retaliation in handling his request for accommodations.

Plaintiff alleges he notified defendants Hansen, Grannis, Alameida, and Tilton of the preceding events on March 20, 2003. Plaintiff alleges that defendants failed to investigate, correct, and modify the violation of the Armstrong Remedial Plan by the institution-level defendants.

a.    Eighth Amendment Medical Care Claim

Plaintiff has not alleged any facts which would support a claim that defendants Barbiero, Allison, McCant, Cotes, Appelbaum, Duvall, Arline, Aguillera-Morrero, Overly, Wu, Poshner, and Does 1-10 "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Defendants' failure to respond to his requests within twenty days and defendant Appelbaum's failure to contact prison officials regarding the violation of the remedial plans do not give rise to a claim for violation of the Eighth Amendment. "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). These defendants were involved in responding to plaintiff's requests for accommodation and/or inmate appeals. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches

beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id. No basis for liability has been stated against them.

### b.  Violation of the Plata and Armstrong Remedial Plans

Plaintiff may not pursue any claims in this action based on the alleged violation of the Plata and Armstrong Remedial Plans. To the extent that plaintiff wishes to seek assistance that he believes is due pursuant to either remedial plan, plaintiff "must pursue his request via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB(PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages in this action solely on the basis that defendants allegedly violated the remedial plans. Plaintiff's claim fails as a matter of law.

### c.  Due Process Claims

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Plaintiff does not have a protected liberty interest in the inmate appeals process. Therefore, defendants' failure to process his appeals or requests for accommodation within the applicable time constraints does not give rise to a claim for relief for violation of the Due Process Clause. Plaintiff's claim fails as a matter of law.

d. <u>Denial of Access to the Courts Claim</u>

Plaintiff's amended complaint is utterly devoid of facts supporting a claim that defendants violated his right of access to the courts. This claim fails as a matter of law.

e. <u>Retaliation Claim</u>

Plaintiff's allegations do not support a claim that any of these defendants retaliated against him, in violation of his First Amendment rights. Plaintiff has provided no factual support for his conclusory allegation that defendants acted as they did in order to retaliate against him for his litigation, and the court finds that failing to respond to plaintiff's requests for accommodation within twenty days and failing to contact prison officials (Deputy Attorney General Appelbaum) are not adverse actions that raise constitutional concerns.

5. <u>Defendants Figueroa, Zimmerman, Bollard, Ward, Duvall, Adams, Sanchez, Yates, Cobbs, Dahlberg, Grannis, Alameida, and Schwarzenegger</u>

Plaintiff alleges that he and eight other inmates filed a group appeal concerning law library issues, retaliation, and interference with the right of access to the courts. Plaintiff alleges he was required to overcome a motion for summary judgment without current caselaw or federal procedures due to the library's deficiencies, and was delayed in bringing this suit due to the deficiencies and to retaliation.

Plaintiff alleges defendant Florence Cotes refused to log inmate appeals in retaliation against plaintiff for petitioning the courts for redress. Plaintiff alleges that defendant Figueroa displayed hostility toward him for petitioning for redress, and began a campaign of retaliation in early 2003. Plaintiff alleges defendant refusing to copy legal documents and denied plaintiff paging services for caselaw, services which were available to other inmates. Plaintiff alleges he was also denied access to the law library despite having court deadlines, and his confidential legal papers were shared with an inmate clerk, who was asked to threaten plaintiff into withdrawing his grievances.

Plaintiff alleges that defendants Zimmerman, Bollard, Ward, and E. S. Cotes failed to train, supervise, investigate and fire defendant Figueroa for his actions, in retaliation against plaintiff. Plaintiff alleges that defendant Cotes refused to log or route plaintiff's inmate appeal onto defendants Zimmerman, Bollard, and Ward. Plaintiff alleges that when the appeal was finally received, defendants all acknowledged that the library was so lacking in materials that it did not constitute a library, although other libraries at the prison were fully stocked. Plaintiff alleges that defendants intentionally deprived him of current materials to lessen his chance of success in his habeas petition and civil rights action.

Plaintiff further alleges that defendant Figueroa retaliated against plaintiff by telling other inmates that plaintiff had lodged personal complaints against him, which subjected plaintiff to verbal abuse and threats of violence.

### a. Due Process Claim

Plaintiff's amended complaint sets forth no facts supporting a claim that he was deprived of a protected interest without due process of law, and therefore fails to state a claim for violation of the Due Process Clause.

### b. Denial of Access to the Courts

Inmates do not have the right to a law library or legal assistance. Lewis v. Casey, 518 U.S. 343, 351 (1996). Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. Id.

Plaintiff has not alleged any facts supporting a claim that each of the named defendants caused him to suffer an actual injury with respect to his habeas petition or civil rights case. The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. The State is not required to enable the inmate to discover grievances or to litigate effectively once in court. Id.

14

c. <u>Retaliation</u>

With respect to defendants Florence Cotes and Figueroa, the actions complained of are sufficient to give rise to claims under section 1983 for retaliation. However, plaintiff's allegations fall short of stating any cognizable retaliation claims against the other defendants. Defendants were either supervisors over defendant Figueroa or involved in the inmate appeals process. Plaintiff has not alleged any facts linking them to acts or omissions that rise to the level of an adverse action within the meaning of the First Amendment. <u>See</u> <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 381 (2d Cir. 2004) (only retaliatory conduct that would objectively deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation; allegations that an officer referred to the plaintiff as an informant and that a sergeant called the plaintiff a rat to his face do not constitute adverse actions and do not make out claims of retaliation) (citations and quotations omitted); <u>see also</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 267(9th Cir. 1997) (guards found guilty of charging inmate with a false rules violation and finding him guilty in retaliation for inmate's prior use of the grievance system); <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995) (inmate alleged that he was transferred to a different prison and double-celled in retaliation for exercising his First Amendment rights); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate alleged that officers labeled him a snitch for petitioning prison and government officials for redress and that, because of this labeling, the inmate was approached by other inmates and threatened with harm); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 530-32 (9th Cir. 1985) (inmate alleged that he was reassigned out of a vocational class and transferred to a different prison because of his activities as a jailhouse lawyer).

6. <u>Defendants Overly, Barbiero, Allison, Bhatt, Santa Cruz, Cobbs, Duvall, Alameida, Tilton, Schwarznegger, Does, Nguyen, Wu, Peneda, Bhatt, Ruff, Allison, Wessel, Stocker, Grannis, Adams, and Cotes</u>

Plaintiff alleges that he was seen by Dr. White on December 4, 2002. Dr. White ordered that plaintiff be brought back within a week for a full medical evaluation and ordered a refill for plaintiff's anti-seizure medication. Plaintiff alleges that the pharmacy staff did not refill the medication. On December 15, 2002, plaintiff filed an inmate appeal requesting his refill and a follow-up with defendant White. Defendant Overly responded to the appeal on February 10, 2003.

Plaintiff alleges that it took him two months to get an appointment with Dr. White and to get a refill of his medication, in violation of the Plata Remedial Plan.

Plaintiff alleges that he had a medical condition which prevented him from swallowing well and required that he be fed in his cell. Plaintiff alleges that as early as November of 2000, defendants Barbiero, Allison, Bhatt, Santa Cruz, Cobbs, Duvall, Alameida, Tilton, and Schwarznegger were aware of his condition. Plaintiff alleges that he had to file an inmate appeal in order to get a "cell feed" chrono, which was issued three months later, on January 2, 2003, by defendant Barbiero. Plaintiff alleges that defendants Santa Cruz and Cobbs intercepted the chrono and cancelled the doctor's orders, saying it was not staff's responsibility to feed plaintiff. Plaintiff alleges that on April 5, 2003, defendant McCant interviewed him and acknowledged it was an ongoing problem.

Plaintiff alleges that on April 23, 2003, he was seen by defendant Wu, who denied plaintiff an extra mattress and a pillow for pain management, necessitated by plaintiff's painful spinal disease, arthritis, and bulging discs. Plaintiff alleges that his request was denied because custody staff would not allow defendant Wu to make the recommendation until plaintiff was completely paralyzed. Plaintiff alleges that either custody staff was interfering with medical decisions or defendant Wu was deliberately indifferent to plaintiff's severe pain. Plaintiff alleges that defendant Wu also denied him wrist braces or medical "unassignment" even though he had carpal tunnel syndrome and arthritis in both hands. Plaintiff alleges that defendant Wu also retaliated against him by pushing him out of Wu's office when plaintiff asked Wu to check on the specialists whom it was recommended plaintiff see.

Plaintiff alleges that he was seen on April 22, 2004, by a prison neurosurgeon, who determined that plaintiff suffered from acute pain necessitating the use of a wheelchair, extra mattresses, and a pillow for spinal disease, placement on permanently "unassigned" status, and placement on chronic care pain management with Vicodin and epidural injections.[2] On May 15, 2003, plaintiff was seen by defendant Dr. Peneda, who examined plaintiff and contradicted what the

---

[2] It appears that 2004 is a typographical error and plaintiff intended to type 2003.

neurosurgeon recommended, stating that plaintiff needed no medical treatment. Plaintiff alleges that up to 2006, this report was used by staff to deny plaintiff's obvious medical need for chronic pain management and referrals.

Plaintiff alleges that he was seen by defendant Dr. Nguyen on July 18, 2003, for review of the GI specialist's report, and to revisit the issues of wheelchair use, pain management, medical disability status, extra mattress and pillow, and referrals to a orthopedist, dietician, and pain management clinic. Plaintiff alleges that defendant refused to look at any of the specialists' reports, and told plaintiff his routine blood work was acceptable and to get out of his office.

Plaintiff alleges that he went to see defendant Nguyen in August of 2003 for a renewal of his prescriptions, including for anti-seizure medication and interferon. Plaintiff alleges that defendant refused to see him and he did not get his prescriptions renewed or a new appointment for weeks, despite MTA Green informing defendant that plaintiff's anti-seizure and interferon prescriptions had expired.

Plaintiff alleges that on September 15, 2003, he saw defendant Nguyen regarding the side effects of Rebetol, which was prescribed for plaintiff's Hepatitis C and was causing plaintiff to be bedridden. Plaintiff alleges that defendant became hostile, refused to open his medical file, berated him for reducing his dosage on his own, and ordered plaintiff out of his office.

Plaintiff alleges that despite numerous complaints about defendant Nguyen from the entire facility, supervisory personnel refused to train, counsel, or remove him.

      a.    Eighth Amendment Medical Care Claims

      1)    Cell Feeding Chrono - Defendants Overly, Barbiero, Allison, Bhatt, Santa Cruz, Cobbs, Duvall, Alamedia, Tilton, Schwarznegger, and Does

As previously set forth, "[d]eliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada,

290 F.3d 1175, 1188 (9th Cir. 2002)).  Plaintiff's allegations relating to the defendants' failure to honor and/or interference with his chrono for cell feeding do not support a claim that defendants Overly, Barbiero, Allison, Bhatt, Santa Cruz, Cobbs, Duvall, Alamedia, Tilton, Schwarznegger, and the Does "[knew] of and disregard[ed] an *excessive* risk to [plaintiff's] health . . . ."  <u>Farmer</u>, 511 U.S. at 837 (emphasis added).

2)   <u>Treatment for Chronic Pain and Medical Issues - Defendants Nguyen, Wu, Peneda, Bhatt, Ruff, Allison, Wessel, Stocker, Grannis, Adams, Cotes, Alameida, Tilton, and Schwarzenegger</u>

Although the court is mindful that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim," <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference, <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989), under federal notice pleading standards, plaintiff's allegations are sufficient to give rise to a claim for relief against defendants Nguyen, Wu, and Peneda for violation of the Eighth Amendment.  The court finds that plaintiff has also sufficiently alleged a link between defendant Bhatt and the conditions complained of.  However, plaintiff's conclusory allegations concerning defendants Ruff, Allison, Wessel, Stocker, Grannis, Adams, Cotes, Alameida, Tilton, and Schwarzenegger are insufficient to support a claim of deliberate indifference under the Eighth Amendment.

7.   <u>Defendants Alameida, Tilton, Schwarzenegger, Orth, Holmes, Duvall, Adams, Grannis, Henry, Frost, Lee, Puguese, Gomez, Mendoza, and Aguilar</u>

Plaintiff alleges that defendants refused boxes of religious books sent to him directly by the publisher on more than one occasion.  Plaintiff appealed the issue but was informed that officials had authority to deny receipt of anything they chose to and that no process was due prior to destruction of the material.  Plaintiff alleges he was told Seventh Day Adventist material must come through a Seventh Day Adventist prison chaplain but there was none.  Plaintiff alleges that although it was conceded there was a five book limit for material received by Seventh Day Adventist stores and publishers, he has not received any compensation for the material destroyed.  Plaintiff alleges that following defendant Orth's concession regarding the five book limit, he paid $150.00 for an order

of religious books, but they were destroyed without notification to him, and the publisher's letter to him was returned as unauthorized correspondence. Plaintiff alleges claims for violation of the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000, and the Rehabilitation Act.

a.    First Amendment Right to Receive Mail

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Prison regulations relating to the regulation of incoming mail are analyzed under the Turner reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989). The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.

Plaintiff's allegations that he was not allowed to receive any religious publications is sufficient to support a claim for relief under section 1983. However, plaintiff has not set forth sufficient facts linking the named defendants to the deprivation. Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if [that person] does an affirmative act, participates in another's affirmative acts or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 466 F.3d 676, 689 (9th Cir. 2006) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also be setting in motion a series of acts by others which the

///

19

actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff may not list numerous defendants and then assert in conclusory fashion that "defendants" were responsible for violating his rights. Section 1983 requires linkage between the actions or omissions complained of and the individual defendant. If plaintiff is asserting a regulation, policy, or procedure is constitutionally deficient, he should (1) identify the regulation, policy, or procedure, (2) identify who was involved in promulgating or enforcing the regulation, policy, or procedure, and (3) identify which actions or omissions the defendant made that establish the requisite link. Instead, plaintiff fills pages unnecessarily argumentative and repetitive facts. This will be plaintiff's final opportunity to amend, so plaintiff is encouraged to focus on his claims, set them forth simply and succinctly, and link the named defendants to the claim clearly and specifically.

### b. RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005). If plaintiff meets his burden, defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest." Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Id.

Plaintiff has not set forth sufficient facts to state a claim for violation of RLUIPA and has not set forth sufficient facts linking actions or omissions of named defendants to the alleged violation of his rights under RLUIPA.

///

c. Property Possession Regulation - Rehabilitation Act and First Amendment Claims

Plaintiff alleges that the regulation restricting inmates to six cubic feet of property in their cells violates his rights under the Rehabilitation Act (RA) because it limits his access to learning material that will allow him to grow and be productive in the world, and violates his rights under the First Amendment because it infringes on his right to own rehabilitative material.

"[Section] 504 of the RA . . . prohibit[s] discrimination on the basis of disability," Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), and provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ," 29 U. S. C. § 794. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Lovell, 303 F.3d at 1052.

Plaintiff's allegation that the regulation permitting inmates only six cubic feet of property in their cells violates his rights under the RA is patently frivolous.

With respect to the First Amendment, plaintiff has supplied no basis for such a claim. The fact that plaintiff is required to exercise discretion in choosing which property he keeps with him in his cell does not offend the Constitution.

8. Due Process Claim Arising from Resolution of Inmate Appeal

Plaintiff filed an inmate appeal concerning the rejection of his publication orders and alleges a due process claim stemming from the consideration of his appeal. This claim fails as a matter of law because plaintiff does not have a protected liberty interest in his inmate appeal. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). The resolution of plaintiff's inmate appeal provides no basis for the imposition of liability against defendants under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

///

### 9. Equal Protection Claim

Plaintiff alleges that defendants' position that religious publishers must be pre-approved vendors violates the Equal Protection Clause. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "Where the challenged governmental policy is 'facially neural,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." Lee, 250 F.3d at 687 (citing Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (264-66) (1977) (internal citations omitted)). "The mere fact that [a] facially neutral polic[y] had a foreseeably disproportionate impact on an identifiable group does not mean that [it] violated the Equal Protection Clause." Id. at 687.

Plaintiff has set forth no facts that support a claim that he was intentionally discriminated against on the basis of being a Seventh Day Adventist.

### 10. Miscellaneous Religious Claims

Plaintiff's final "claim" involves a myriad of subclaims, all relating to religion. Once again, plaintiff attempts to draw in as defendants the individuals who responded to his inmate appeal. This is not a sufficient basis upon which to impose liability under section 1983. The fact that an individual reads and responds to plaintiff's appeal of a problem does not work to place that individual in the shoes of the person who allegedly directly violated plaintiff's rights. If there is a regulation, policy, or practice that is leading to the violation of plaintiff's constitutional rights, plaintiff should identify the regulation, policy, or practice, identify who was responsible for creating

or enforcing the regulation, policy, or practice, and briefly describe the culpable defendant's involvement.

D.    Conclusion

Plaintiff's amended complaint states some cognizable claims for relief under section 1983. However, plaintiff's amended complaint sets forth many deficient claims, largely due to plaintiff's failure to adequately link the violation of his rights to specific acts or omission of individual defendants. Plaintiff will be provided with one final opportunity to amend.

Between this order and the order filed on February 24, 2006, plaintiff has been provided with all of the applicable legal standards. Plaintiff is reminded that he should not rely on legal citations or legal argument to support his claims. Plaintiff is required to clearly, plainly, and briefly set forth his legal claims, and then set forth sufficient supporting facts to link specific acts or omissions of the named defendants to the violation of his rights. Fed. R. Civ. P. 8(a). The claims found to be cognizable by the court exemplify the type of information necessary to state a claim (e.g., plaintiff's Eighth Amendment medical care claims against defendants Nguyen, Wu, and Peneda). Plaintiff's final claim, beginning at paragraph sixty-five, exemplifies what plaintiff should avoid - paragraphs devoted to legal argument and legal citations with many extraneous, immaterial facts, and lacking in a focused explanation as to what violation occurred and who caused the violation to occur. For example, if plaintiff's religion mandates Saturday worship as a major tenant of plaintiff's religion, and plaintiff was not provided with the opportunity to participate in any Saturday worship services, in violation of the Free Exercise Clause of the First Amendment and/or RLUIPA, what was the basis for the denial or the lack of availability of Saturday services? Is there a written policy or regulation, or is someone like the prison warden responsible for providing an equal opportunity to worship for all religions but has not done so?

Critical to plaintiff's ability to proceed in this action on his claims is plaintiff's willingness to describe, *simply and in a straightforward manner*, the basis of the violation and the involvement of the each named defendant. The fact that plaintiff separated his claims and made an attempt to identify the involved defendants at the outset of each claim was helpful in allowing the court to

///

screen his complaint and plaintiff should stick with that format or a similar one that makes it clear what the claims are and who the involved defendants are.

Plaintiff is informed he must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for the appointment of counsel, filed December 20, 2006, is DENIED;

2. Plaintiff's amended complaint is dismissed, with leave to amend;

3. The Clerk's Office shall send plaintiff a complaint form;

4. Within **thirty (30) days** from the date of service of this order, plaintiff shall file a second amended complaint that complies with the directives in this order; and

5. If plaintiff fails to file a second amended complaint within thirty days, this action will be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

Dated:     **March 7, 2007**                    **/s/ Sandra M. Snyder**
icido3                                          UNITED STATES MAGISTRATE JUDGE