# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HIGHTOWER,<br><br>    Plaintiff,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, et. al.,<br><br>    Defendants.<br>_____/ | CASE NO. 1:04-cv-06028-OWW-SMS (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ONLY AGAINST DEFENDANTS J. KLARICH, K. NYGUEN, D. DEERING, S. WU, AND A. SANTA CRUZ AND THAT DEFENDANT SCHWARZENEGGER BE DISMISSED<br><br>OBJECTIONS, IF ANY, DUE IN 30 DAYS<br><br>(Doc. 141) |

**Findings and Recommendations Following Screening
of Third Amended Complaint**

**I.    Procedural History**

Plaintiff, Thomas A. Hightower ("Plaintiff") is a state prisoner proceeding pro se and in formal pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on July 29, 2004. (Doc. 1.) On February 24, 2006, the Court dismissed Plaintiff's Complaint, with leave to amend, for failure to comply with Federal Rule of Civil Procedure 8(a). (Doc. 13.) Plaintiff filed a First Amended Complaint on June 28, 2006. (Doc. 21.) On March 8, 2007, the Court dismissed Plaintiff's First Amended Complaint, for failure to state cognizable claims, with leave to amend. (Doc. 23.) On August 13, 2007, Plaintiff filed his Second Amended Complaint. (Doc. 31.) On March 19, 2008, the Court issued Findings and Recommendations to dismiss uncognizable claims and to allow service on cognizable claims, which were adopted on July 8,

1

2008.  (Docs. 32, 38.)  Defendant Figueroa filed a motion to dismiss under Fed. R. Civ. P. 12(b) and 12(b)(6), on which Findings and Recommendations to grant have issued and been adopted.  (Docs. 69, 116, 121.)  Various other Defendants also filed motions to dismiss under Fed. R. Civ. P. 12(b) and 12(b)(6).  (Docs. 75, 97.)  Upon reviewing those motions, it was determined that Plaintiff's Second Amended Complaint should be re-screened in light of the new pleading standards that were ushered in by the Supreme Court's opinion in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).  *See Moss v. U.S. Secret Service*, 572 F.3d 962, 968-69 (9th Cir. 2009), *ref. Iqbal*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Second Amended Complaint was found to be replete with general conclusions – which were insufficient to state cognizable claims in light of *Iqbal* – and to contain multiple, unrelated claims in violation of Rule 18 of the Federal Rules of Civil Procedure.  Since it was possible that Plaintiff could amend to state factual allegations, sans conclusions and unrelated claims, to correct the deficiencies in his pleading, the Second Amended Complaint was dismissed with leave to amend.  (Docs. 123 and 129.)

After requesting and receiving extensions of time, Plaintiff filed the Third Amended Complaint which is presently before the Court.  (Doc. 141.)  For the reasons that follow, the Court recommends that this action proceed only on Plaintiff's claims against Defendants Dr. Klarich, Dr. Nyguen, Dr. Deering, Dr. Wu, and Capt. A. Santa Cruz under the Eight Amendment for deliberate indifference to his serious medical needs, and against Captain A. Santa Cruz for unconstitutional retaliation under the First Amendment; and that all other claims and Defendants be dismissed with prejudice.

**II.**     **<u>Screening Requirement</u>**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

paid, the court shall dismiss the case *at any time* if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (*ref. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusion are not. *Id.* at 1949.

**A.    Summary of Claims in the Third Amended Complaint**

Plaintiff is currently housed at Mule Creek State Prison ("MCSP") in Ione, California, but complains of acts which occurred while he was housed at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California. Plaintiff seeks declaratory relief and monetary damages. The only Defendants named by Plaintiff in the Third Amended Complaint are: A. Schwarzenegger; Dr. Klarich; Dr. Nyguen; Dr. Deering; Dr. Wu, and A. Santa Cruz. All other previously named Defendants should be dismissed from this action.

**B.    Legal Standards**[1]

**1. Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at

---

[1] Plaintiff's claims against Defendant Governor Schwarzenegger are addressed in a separate subsequent subsection.

3

1059 (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. *Id.* In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir.1988). Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff must show that the delay was harmful. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir.1994) (*per curiam*); *McGuckin*, 974 F.2d at 1059; *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir.1990); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989). Only delays that cause substantial harm violate the Eighth Amendment. *Berry* 39 F.3d at 1057 *ref Wood,* 900 F.2d at 1335.

As to Dr. Klarich, Plaintiff alleges that he submitted to Defendant Dr. Klarich over a period of almost a year and a half (04/15/2002 - 11/20/2003) and that he presented with obvious indicators of end stage liver disease, respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease. (Doc. 141, 3rd Amd. Compl., 10:10-12:14.) Plaintiff alleges that Defendant Dr. Klarich: (1) knew of Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status and only prescribed medical cell feedings; (2) knew of Plaintiff's respiratory distress symptoms of suffocation and black-outs ("obvious indications of acute emphysema, bronchitis, asthma attacks") and yet failed to prescribe chest x-rays and breathing treatments; (3) and knew of Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring and the fact that Plaintiff was in obvious acute distress

4

from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in severe pain at all times. (*Id.*, at ¶¶ 15-25.) These allegations are sufficient to state a cognizable claim against Defendant Dr. Klarich for deliberate indifference to Plaintiff's serious medical needs.

Plaintiff alleges that he submitted to Defendant Dr. Nyguen for slightly over a year (09/20/2002 - 11/22/2003) and that he presented with obvious indicators of end stage liver disease, and respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease. (*Id.* at 14:8-15:20, 21:1-22:19.) Plaintiff alleges that Dr. Nyguen: (1) knew of Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status ("mental confusion presentation [end stage liver failure indicators]") and only prescribed over the counter antacids and routine blood work for GI conditions; (2) knew of Plaintiff's respiratory distress symptoms and yet failed to prescribe chest x-rays or breathing treatments thus causing oxygen deprivation and blackouts; (3) knew of Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring and realized that Plaintiff presented in obvious acute distress from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in sever pain at all times. (*Id.* at ¶¶ 34-41.) Plaintiff alleges that in August of 2003, he was seen by Defendant Dr. Nyguen for renewal of all medications, including his anti-seizure medication Tegratol and interferon which Defendant Dr. Nyguen had allowed to expire. (*Id.* at ¶ 58.) Knowing that Plaintiff's life and health were at risk without these medications, Defendant Dr. Nyguen refused to see Plaintiff, did not renew his medications for weeks, and did not see Plaintiff for a re-scheduled appointment until weeks later. (*Id.*) On September 15, 2003, Defendant Dr. Nyguen saw Plaintiff for being bedridden due to excessive illnesses secondary to his prescription of Rebetol. (*Id.* at ¶ 59.) Defendant Dr. Nyguen became hostile and refused to even open Plaintiff's medical file to review the results of recently taken lab tests, ordered Plaintiff to leave, and ended the appointment without rendering any medical care to Plaintiff. (*Id.*) These allegations are sufficient to state a cognizable claim against Defendant Dr. Nyguen for deliberate indifference to Plaintiff's serious medical needs.

Plaintiff alleges that he submitted multiple times to Defendant Dr. Deering during a period of slightly over a year (09/20/2002 - 11/22/2003) and that he presented with obvious indicators of end stage liver disease, respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease. (*Id.* at 15:21-17:14.) Plaintiff alleges that Defendant Dr. Deering: (1) knew of Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status and only prescribed over the counter antacids; (2) knew of Plaintiff's respiratory distress symptoms ("indicative of acute bronchitis, asthma, emphysema attacks") and yet failed to prescribe a chest x-ray or breathing treatments thus causing oxygen deprivation and blackouts; (3) knew of Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring, history of two failed spinal surgeries, and the fact that Plaintiff presented in obvious acute distress from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in severe pain at all times. (*Id.*)  These allegations are sufficient to state a cognizable claim against Defendant Dr. Deering for deliberate indifference to Plaintiff's serious medical needs.

Plaintiff alleges that he submitted to Dr. Wu for slightly over a year (09/20/2002 - 11/22/2003) and that he presented with obvious indicators of end stage liver disease, and respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease. (*Id.* at 17:16-19:24.) Plaintiff alleges that Dr. Wu: (1) knew of Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status and only prescribed medical cell feedings and over the counter antacids; (2) knew of Plaintiff's respiratory distress symptoms and yet failed to prescribe a chest x-ray or breathing treatments thus causing oxygen deprivation, blackouts, organ damage, brain cell death, and distress for weeks similar to slow suffocation; (3) knew of Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring, history of two failed spine surgeries, and the fact that Plaintiff presented in obvious acute distress from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in severe pain at all times. (*Id.* at ¶¶ 48-52.) Further, Plaintiff alleges that on April 23, 2003, Dr. Wu saw Plaintiff: (1) knew that he was in severe pain, acknowledged

that hard steel bunks were aggravating his pain from bulging discs, spinal disease, and arthritis, yet denied Plaintiff an extra mattress and pillow for pain management; (2) confirmed carpal tunnel syndrome and arthritis in both hands, but refused to issue wrist braces for pain, "nor medically unassigned status;" and (3) when Plaintiff requested Dr. Wu check on appointments with specialists that were more than a year overdue, Dr. Wu pushed Plaintiff out of his office and told Plaintiff to file a grievance on him, since Plaintiff was so good at it. (*Id.* at ¶¶ 53-56.) These allegations are sufficient to state a cognizable claim against Defendant Dr. Wu for deliberate indifference to Plaintiff's serious medical needs.

Plaintiff's allegations that, in retaliation for Plaintiff having handed him an inmate appeal regarding prison staff not providing him with food trays hin his cell, Defendant Captain Santa Cruz refused to honor and had Klarich's medical order for in-cell food trays modified and restricted so as to inflict unnecessary pain on Plaintiff who had difficulty walking which caused painful aggravation of Plaintiff's carpal tunnel syndrome from trying to carry and balance his food tray in one hand while walking with a cane in the other. (*Id.* at ¶¶ 26-33) These allegations are sufficient to state a cognizable claim under the Eighth Amendment for deliberate indifference by Defendant Captain Santa Cruz to Plaintiff's serious medical needs as Defendant Captain Santa Cruz was interfering with medical orders which resulted in substantial harm (i.e. exacerbating Plaintiff's carpal tunnel syndrome, causing acute pain of Plaintiff's "blown" lumbar discs, constant GI disease, and wild weight fluctuations (*id.* at ¶ 32)).

### 2. First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-

7

68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Bennett v. Hendrix*, 423 F.3d 1247, 1250-51 (11th Cir. 2005); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. *Rhodes*, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); *Austin*, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); *Bruce*, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); *Hines v. Gomez*, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); *Pratt*, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); *Valandingham*, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); *Rizzo*, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff alleges that Defendant Santa Cruz became livid on November 14, 2002 when Plaintiff filed an inmate appeal stating that subordinates of Defendant Santa Cruz were refusing to order medical cell feed trays for Plaintiff, despite Defendant Dr. Klarich's order to do so. (Doc. 141, 3rd Amd. Compl., ¶ 26.) Subsequently, Defendant Santa Cruz refused to follow Defendant Dr. Klarich's orders, and forced Plaintiff to either pick up a food tray, carry it to his

cell and back, over a hundred (100) yards one way, or starve. (*Id.* at ¶¶ 28-31.) Defendant Santa Cruz also ordered Dr. White to change Plaintiff's "cell feed chrono" from six months to only one month. (*Id.*) These allegations are sufficient to state a cognizable claim against Defendant Santa Cruz for retaliation.

Plaintiff alleges that on July 18, 2003, Plaintiff was seen by Defendant Dr. Nyguen regarding a healthcare request form seeking Defendant Dr. Nyguen to review a "GI Specialist's report; revisit wheelchair use; a pain management plan; medical disability; pain management via issuance of a chrono for an extra mattress/pillow; and to review why it had been over a year and he had still not had appointments with an orthopedist, dietician, and a pain management clinic. (*Id.* at ¶ 57.) Defendant Dr. Nyguen told Plaintiff to file an inmate appeal again and because he was not going to treat Plaintiff. (*Id.*) Plaintiff's allegations that Defendant Dr. Nyguen denied him medical care, acknowledged that Plaintiff might disagree, and was aware of how to express his disagreement in an inmate appeal does not mean that Plaintiff's past grievance filing was the impetus for Defendant Dr. Nyguen denying him medical treatment. The mere possibility that acts occurred because of an unconstitutional motive does not provide a basis for the Court to draw a reasonable inference that such was the case. *Iqbal*, 129 S.Ct. at 1949. Plaintiff's allegations do not rise to the level of a facially plausible claim that Dr. Nyguen refused to provide him medical care *because* of Plaintiff's past grievance filing activities. Plaintiff fails to state a claim for unconstitutional retaliation against Defendant Dr. Nyguen. Accordingly, Plaintiff's claim for retaliation against Dr. Nyguen should be dismissed.

Plaintiff alleges that Defendant Dr. Wu retaliated against him on April 23, 2003 by "rudely and physically" pushing Plaintiff out of his office when Plaintiff asked him to check on appointments with specialists which were a year overdue. (Doc. 141, 3rd Amd. Compl., ¶ 56.) Plaintiff alleges that, as Defendant Dr. Wu was pushing Plaintiff out of the office, he told Plaintiff to file a grievance on him since Plaintiff was so good at that. (*Id.*) Being pushed out of an office and being told to file a grievance simply do not rise to the level of unconstitutional retaliation. While these allegations show that Defendant Dr. Wu was aware of Plaintiff's grievance filing proclivities, they do not amount to acts in retaliation for those activities. Once

9

again, the mere possibility that acts occurred because of an unconstitutional motive does not provide a basis for the Court to draw a reasonable inference that such was the case. *Iqbal*, 129 S.Ct. at 1949. Plaintiff's allegations do not rise to the level of a facially plausible claim that Dr. Wu refused to provide him medical care *because* of Plaintiff's past grievance filing activities. Plaintiff fails to state a claim for unconstitutional retaliation against Defendant Dr. Wu. Accordingly, Plaintiff's claim for retaliation against Defendant Dr. Wu should be dismissed.

Plaintiff does not state any factual allegations to attempt to show that Defendants Dr. Klarich, Dr. Deering, or Gov. Schwarzenegger engaged in retaliatory acts against him. Any claims of retaliation against Defendants Dr. Klarich, Dr. Deering, or Gov. Schwarzenegger should be dismissed.

### 3. Supervisory Liability

Plaintiff's claims against Defendant Schwarzenegger are based solely on the funding of the medical treatment inmates receive in state prisons. Plaintiff seeks money damages from Defendant Governor Schwarzenegger in both his official and individual capacities.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *Suever v. Connell*, 579 F.3d 1047, 1060-61 (9th Cir. 2009). Plaintiff is not allowed to pursue money damages against Defendant Governor Schwarzenegger in his official capacity.

Further, evaluating Plaintiff's claims for money damages against Defendant Governor Schwarzenegger in his individual capacity, requires an "individualized" inquiry such as that applicable to suits seeking damages from individual prison officials. *See Williams v. Bennett,* 689 F.2d 1370, 1383-84 (11th cir. 1982). Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d

858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

However, "'bare assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss, [and thus also for screening] are not entitled to an assumption of truth.'" *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion - even if that conclusion is cast in the form of a factual allegation." *Id.* "Thus, in *Iqbal*, the Court assigned no weight to the plaintiff's conclusory allegation that former Attorney General Ashcroft and FBI Director Mueller knowingly and willfully subjected him to harsh conditions of confinement 'solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" *Id.* (quoting the plaintiff's complaint in *Iqbal*.)

> To survive a motion to dismiss, [and thus also to state a cognizable] a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S.Ct. at 1949 (citations omitted).

Plaintiff alleges that Defendant Governor Schwarzenegger is deliberately indifferent to "to known serious medical needs in violation of the 8th Amendments cruel and unusual

11

punishment prohibition; and State Law duties/liabilities vested upon him" (Doc. 141, 3rd Amd. Compl., ¶ 6) because: Defendant Governor Schwarzenegger is responsible for assuring sufficient funding is apportioned to the medical department at SATF (*id.* at ¶ 6); every named physician defendant in this action indicated to Plaintiff that they refused to prescribe necessary treatments and/or medication for Plaintiff's serious medical needs due to its cost (*id.* at ¶ 63); and Defendant Governor Schwarzenegger has publicly admitted that there is a crisis in the medical system of the state's prisons resulting in unnecessary, preventable deaths (*id.*).

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. Plaintiff's allegations based on the mere possibility of a connection between the alleged lack of medical care Plaintiff received and Defendant Governor Schwarzenegger's possible involvement in the funding of the prison's medical care system and/or apportionment of monies to inmates' medical care and treatment within the funds designated for California prisons, simply are not facially plausible so as to state a cognizable claim against Defendant Governor Schwarzenegger for deliberate indifference specifically to Plaintiff's serious medical needs.

### 4. State Law Claims

Plaintiff alleges that the actions by the named defendants violated his rights under a plethora of California statutes. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiff is advised that the Supreme Court has cautioned that, "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

### 5. Declaratory Relief

It is well settled that "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in Plaintiff's favor, that verdict will be a finding that Plaintiff's constitutional rights were violated. Further, "'[a] case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotations and citation omitted)). Plaintiff's transfer out of SATF rendered any claims for injunctive and/or declaratory relief moot.

Accordingly, a declaration that Defendants violated Plaintiff's rights is unnecessary such that Plaintiff's request for declaratory relief should be dismissed.

### III. Conclusion and Recommendation

Plaintiff's Third Amended Complaint states cognizable claims for relief (1) against Defendants Dr. Klarich, Dr. Nyguen, Dr. Deering, Dr. Wu, and Capt. A. Santa Cruz under the Eight Amendment for deliberate indifference to his serious medical needs; and (2) against Captain A. Santa Cruz for unconstitutional retaliation under the First Amendment. However, Plaintiff's complaint does not state any other cognizable claims upon which relief may be granted.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's Third Amended Complaint, filed

February 23, 2010 against:

    a.     Defendants Dr. Klarich, Dr. Nyguen, Dr. Deering, Dr. Wu, and Capt. A. Santa Cruz for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; and

    b.     Defendant Capt. A. Santa Cruz for retaliating against Plaintiff because Plaintiff engaged in protected First Amendment activities;

2. All of Plaintiff's claims, other than as found cognizable immediately above, be dismissed for failure to state a claim upon which relief may be granted;

3. Defendant Governor Schwarzenegger be dismissed from this action with prejudice based on Plaintiff's failure to state any claims upon which relief may be granted against him; and

4. Plaintiff's request for declaratory relief be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    August 31, 2010                 /s/ Sandra M. Snyder
                                                  UNITED STATES MAGISTRATE JUDGE