# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HIGHTOWER, | CASE NO. 1:04-cv-06028-OWW-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | (Doc. 151) |
| Defendants. | OBJECTIONS DUE IN THIRTY (30) DAYS |

## I. FINDINGS

### A. Procedural History

Plaintiff, Thomas A. Hightower ("Plaintiff"), is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on July 29, 2004. (Doc. 1.) On February 24, 2006, the Court dismissed Plaintiff's Complaint, with leave to amend, for failure to comply with Federal Rule of Civil Procedure 8(a). (Doc. 13.) Plaintiff filed a First Amended Complaint on June 28, 2006. (Doc. 21.) On March 8, 2007, the Court dismissed Plaintiff's First Amended Complaint, for failure to state cognizable claims, with leave to amend. (Doc. 23.)

On August 13, 2007, Plaintiff filed his Second Amended Complaint. (Doc. 31.) On March 19, 2008, the Court issued Findings and Recommendations to dismiss noncognizable claims and to allow service on cognizable claims, which were adopted on July 8, 2008. (Docs.

1

32, 38.) Defendant Figueroa filed a motion to dismiss under Federal Rules of Civil Procedure[1] 12(b) and 12(b)(6), on which Findings and Recommendations to grant have issued and been adopted. (Docs. 69, 116, 121.) Other Defendants also filed motions to dismiss under Rules 12(b) and 12(b)(6). (Docs. 75, 97.) Upon reviewing those motions, it was determined that Plaintiff's Second Amended Complaint should be re-screened in light of the new pleading standards set forth by the Supreme Court's opinion in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009). *See* Moss v. U.S. Secret Service, 572 F.3d 962, 968-69 (9th Cir. 2009), *ref.* Iqbal; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Second Amended Complaint was found to be replete with both general conclusions -- which were insufficient to state cognizable claims in light of Iqbal -- and multiple, unrelated claims in violation of Rule 18. Since it was possible that Plaintiff could amend to state factual allegations, without conclusions and unrelated claims, to correct the deficiencies in his pleading, the Second Amended Complaint was dismissed with leave to amend. (Docs. 123 and 129.)

After requesting and receiving extensions of time, Plaintiff filed the Third Amended Complaint. (Doc. 141.) Upon recommendation subsequent to screening, it was ordered that this action proceed only on Plaintiff's claims against Defendants Dr. Klarich, Dr. Nyguen, Dr. Deering, Dr. Wu, and Capt. A. Santa Cruz under the Eight Amendment for deliberate indifference to his serious medical needs, and against Captain A. Santa Cruz for unconstitutional retaliation under the First Amendment. (Docs. 144, 148.) All other claims and remaining Defendants were dismissed with prejudice. (Id.)

Subsequently, Defendants Dr. Nyguen and Dr. Wu (hereinafter "Defendants")[2] filed a motion to dismiss under Rule 12(b).[3] (Doc. 151.) After requesting and receiving extensions,

---

[1] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

[2] Suggestions of Death have been entered on the docket of this case as to Dr. Klarich (Doc. 44), Dr. Deering (Doc. 47), and Captain Santa Cruz (Doc. 120). This motion was brought only by Defendants Dr. Nyguen and Dr. Wu.

[3] In their motion, Defendants refer to and incorporate evidence submitted with their original motion to dismiss at Doc. 75-2.

Plaintiff filed his opposition.[4]  (Docs. 156 - 160.)  Defendants requested and received an extension to file their reply.  (Docs. 161, 162, 163.)  The motion is deemed submitted.  Local Rule 230(l).

### B.    Plaintiff's Claim Against Defendant Dr. Nyguen

Plaintiff alleges that he was under the care and treatment of Defendant Dr. Nyguen for slightly over a year (9/20/2002 - 11/22/2003), and that during that time, he presented with obvious indicators of end stage liver disease, respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease.  (Doc. 141, 3AC, 14:8-15:20, 21:1-22:19.)[5]  Plaintiff alleges that Dr. Nyguen: (1) knew of Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status and only prescribed over the counter antacids and routine blood work for GI conditions; (2) knew of Plaintiff's respiratory distress symptoms and yet failed to prescribe chest x-rays or breathing treatments which caused oxygen deprivation and blackouts; and (3) knew of Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring and realized that Plaintiff presented in obvious acute distress from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in severe pain at all times.  (Id. at ¶¶ 34-41.)

Plaintiff further alleges that in August of 2003, he was seen by Dr. Nyguen for renewal of all medications, including his anti-seizure medication Tegratol and interferon which Dr. Nyguen had allowed to expire.  (Id. at ¶ 58.)  Knowing that Plaintiff's life and health were at risk without these medications, Dr. Nyguen refused to see Plaintiff, did not renew his medications for several weeks, and did not see Plaintiff for a re-scheduled appointment until weeks after the appointment.  (Id.)  On September 15, 2003, Dr. Nyguen saw Plaintiff for being bedridden due to excessive illnesses secondary to his prescription of Rebetol.  (Id. at ¶ 59.)  Dr. Nyguen allegedly became hostile and refused to even open Plaintiff's medical file to review the results of recently

---

[4] Plaintiff was provided with notice of the requirements for opposing an un-enumerated Rule 12(b) motion on July 24, 2008.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).  (Doc. 42.)

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

3

taken lab tests, ordered Plaintiff to leave, and ended the appointment without rendering any medical care to Plaintiff. (Id.)

These allegations were found to state a cognizable claim for deliberate indifference to Plaintiff's serious medical needs against Dr. Nyguen. (Doc. 144, Screen F&R; Doc. 148, O Adopt.)

### C. Plaintiff's Claim Against Defendant Dr. Wu

Plaintiff alleges that he was seen for medical care and treatment by Defendant Dr. Wu during a time frame of slightly over a year (9/20/2002 - 11/22/2003), and that throughout that time he presented with obvious indicators of end stage liver disease, respiratory distress, COPD w/emphysema, seizure disorder, spinal disease, and GI disease. (Doc. 141, 3AC, 17:16-19:24.) Plaintiff alleges that Dr. Wu knew of: (1) Plaintiff's high ammonia levels and mental confusion, yet intentionally disregarded the severity of Plaintiff's medical status and only prescribed medical cell feedings and over the counter antacids; (2) Plaintiff's respiratory distress symptoms and yet failed to prescribe a chest x-ray or breathing treatments thus causing oxygen deprivation, blackouts, organ damage, brain cell death, and distress for weeks similar to slow suffocation; and (3) Plaintiff's degenerative spinal and facet disease, arthritis, bone spurring, history of two failed spine surgeries, and the fact that Plaintiff presented in obvious acute distress from pain, yet only prescribed over the counter Ibuprofen for pain, knowing that this would leave Plaintiff in severe pain at all times. (Id. at ¶¶ 48-52.) Plaintiff further alleges that on April 23, 2003, Dr. Wu saw Plaintiff, knew that he was in severe pain, acknowledged that hard steel bunks were aggravating his pain from bulging discs, spinal disease, and arthritis, yet denied Plaintiff an extra mattress and pillow for pain management. (Id. at ¶¶ 53-56.) Though he confirmed carpal tunnel syndrome and arthritis in both of Plaintiff's hands, Dr. Wu refused to issue wrist braces for pain, "nor medically unassigned status." (Id.) Finally, when Plaintiff requested that Dr. Wu check on appointments with specialists that were more than a year overdue, Dr. Wu pushed Plaintiff out of his office and told Plaintiff to file a grievance/appeal on him, since Plaintiff was so good at it. (Id.) These allegations were found to state a cognizable claim for deliberate indifference to Plaintiff's serious medical needs against Dr. Wu. (Doc. 144, Screen F&R; Doc. 148, O Adopt.)

**D. Exhaustion of Administrative Remedies**

Defendants seek dismissal of Plaintiff's claims under Rule 12(b) for failure to exhaust administrative remedies before filing suit. (Doc. 151, MTD.)

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 210-11 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of both the relief sought by the prisoner and offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 215-16; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust a non-judicial administrative remedy that is not jurisdictional is subject to an unenumerated Rule 12(b) motion. Wyatt, 315 F.3d at 1119 (*citing* Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (*per curium*)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. If it is concluded that the prisoner failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

The California Department of Corrections has an administrative grievance/appeal system for prisoner complaints for which full compliance constitutes exhaustion of administrative remedies. Cal. Code Regs., tit. 15 § 3084, et seq. "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Id. at

§ 3084.1(a). Four levels of grievances/appeals are involved, including an informal level, first formal level, second formal level, and third formal level also known as the "Director's Level." Id. at § 3084.5.

The United States Supreme Court has held that, prior to filing suit in federal court, a prisoner must exhaust remedies through the offending prison's administrative grievance/appeal process. Booth, 532 U.S. at 741. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218.

### E. Defendants' Motion to Dismiss

In their motion, Defendants argue that only three of Plaintiff's inmate appeals (Inmate Appeal ("I.A.") no. SATF 03-04654, I.A. no. SATF 02-05072, and I.A. no. SATF 03-03706) relate to Defendants and that none of them is sufficient to have exhausted Plaintiff's available administrative remedies on his claims against them. (Doc. 151, MTD, 6: 8-7:5.)

Defendants argue that while I.A. no. SATF 03-04654 alleged that Dr. Wu denied him accommodations for his spinal disorder, Plaintiff did not pursue it after being denied at the first level. (Id. at 6:13-15; Doc. 75-2, Gomez Decl.¶¶ 5, 14, Exh. I.)

As to I.A. no. SATF 02-05072, while it requests referrals to multiple specialists, transfer to another facility, and prompt dispensation of medications and was pursued to the Director's Level, Defendants argue it could not have provided exhaustion of Plaintiff's claims against Defendants as it was received by prison staff on September 25, 2002 – only five days after Plaintiff allegedly first saw Defendants and before the majority of the events alleged in this action occurred. (Id. at 6:16-23; Doc. 75-2, Gomez Decl.¶ 8, Exh. C.)

Finally, as to I.A. no. SATF 03-03706, Defendants argue that it is not applicable as, even

though Plaintiff pursued it to the Director's Level, it does not relate to the Plaintiff's allegations.[6] (Id. at 6:24-7:2; Doc. 75-2, Gomez Decl.¶ 13, Exh. H.)

### F. Discussion of Evidence

Defendants' evidence is insufficient to show an absence of exhaustion on the challenged claims. To the contrary, it implies that Plaintiff actually exhausted the available administrative remedies on his claims of Defendants' deliberate indifference to his serious medical needs.

In support of this motion, Defendants submit the declarations of N. Grannis, R. Gomez, and G. Wilson[7] along with copies of various of Plaintiff's inmate appeals.[8] (Doc. 75-3, pp. 1-50.) However, Grannis, Gomez, and Wilson fail to state that they read Plaintiff's inmate appeals for content and applicability to the claims challenged herein. Further, the subject matter delineations (i.e., "Legal," "Medical," "Transfer") in the declaration of N. Grannis are insufficient for the Court to ascertain whether the claims Plaintiff raised in any appeal provided prison officials with notice of the issues underlying his claims in this action.

The recitations in the declaration of R. Gomez are less cursory, but are similarly insufficient to prove that Plaintiff failed to exhaust the claims he raises. Conversely, the summary of issues provided in R. Gomez's declaration implies that Plaintiff exhausted his available administrative remedies as to his claims of deliberate indifference by Defendants to his GI/liver disease to the extent that those claims involved "improper treatment for his Hepatitis C virus" (I.A. SATF-02-04423); "Request[ed] a specialist for liver biopsy" (I.A. SATF-02-05072); and deliberate indifference by Dr. Nguyen to the extent that he complained that "Dr. Nguyen

---

[6] Defendants make this argument despite Plaintiff's complaint that he had an appointment with Dr. Nyguen to discuss three outside specialists' reports and evaluate the Unit Classification Committee's recommendation for permanent wheelchair status, permanent medical disability designation, and to be permanently cell-fed a special diet.

[7] G. Wilson is the appeals coordinator at Mule Creek State Prison where Plaintiff was housed subsequent to the events in this action. This declaration is irrelevant as it only addresses one appeal which Plaintiff filed at Mule Creek in June of 2004.

[8] For the most part, Defendants submitted copies of just Director's Level Appeal Responses – without submitting Plaintiff's allegations on the claims at the various preceding levels of review. This neither allows the Court to ascertain the content of Plaintiff's appeals and what notice they might have provided to Defendants at the various levels of review, nor shows that the appeals prior to that level did not specifically address Plaintiff's claims which Defendants challenge in this motion.

7

threw him out of his office" (I.A. SATF-03-03706). (Doc. 75-2, pp. 11-14, Gomez Dec. at ¶¶ 5-14.) Plaintiff pursued all three of these appeals to the Director's Level. (Id.)

The defense affidavits describe the inmate appeal process, but do not state sufficient facts to show that Plaintiff failed to exhaust his administrative remedies on his claims in this action. Such lack of evidence establishing that Plaintiff's inmate appeals specifically did *not* address the claims raised in the complaint does not establish that Plaintiff failed to exhaust the available administrative remedies so as to justify dismissal of his claims. *See* Wyatt, 315 F.3d at 1119. Further, a mere list of Director's Level appeals (as delineated in the defense affidavits) is insufficient to prove lack of exhaustion where it is not established that such appeals were read and do not relate to the subject alleged in Plaintiff's complaint. Id. Finally, the documents submitted as defense exhibits are inadequate. Although "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion," Wyatt, 315 F.3d at 1119, *quoting* Ray v. Kertes, 285 F.3d 287, 295 (3rd. Cir. 2002), Defendants submitted copies of seven Director's level responses and six of Plaintiff's appeals at the lower levels[9] but failed to include both sides/pages of every document. Plaintiff, however, submitted copies of almost *all* levels of his appeals (even including a number of exhibits) and almost *all* levels of the review decisions on the majority of his inmate appeals that Defendants referenced.[10]

### 1. Specificity and Timeliness of Inmate Appeals

Where a prison's appeal process does not specifically require a prisoner to identify offending prison staff in an inmate grievance/appeal, the failure to do so will not be seen as a *per se* failure to exhaust a claim against a defendant who was not named in the prison grievance/appeal process. Jones, 549 U.S. at 200-201. Further, "if prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison

---

[9] The Court notes that Defendants listed some nineteen inmate appeals that Plaintiff filed in the declarations of Grannis, Gomez, and Wilson.

[10] The parties should not construe the Court's references to Plaintiff's evidence as implying that Defendants have met their burden of proof on any aspect of this motion. The Court explicitly finds to the contrary. Plaintiff's evidence is instead mentioned to highlight the inadequacies of Defendants' motion and to lend further basis for the findings and recommendation to deny this motion with prejudice.

8

to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.'" Johnson v. Testman, 380 F.3d 691, 697 (2nd Cir. 2004) (*quoting* Strong v. David, 297 F.3d 646, 650 (7th Cir.2002)). The Ninth Circuit held that the standards established in Strong are appropriately applied to ascertain whether prisoner grievances/appeals are sufficient to notify prison personnel of a problem for exhaustion purposes. Griffin v. Arpaio, 557 F.3d 1117, 1120. Accordingly, as discussed in further detail below, Plaintiff's inmate appeals numbered I.A. SATF-02-04423, I.A. SATF-02-05072, I.A. SATF-02-05818, I.A. SATF-03-01347, and I.A. SATF-03-03706 show that the content of his allegations were sufficient to have placed prison officials on notice of the deficiencies in the medical care that Defendants were providing to Plaintiff.

Further, an inmate grievance/appeal that was filed before all alleged events of medical deficiency occurred and was pursued through all available remedies suffices to exhaust the inmates' available administrative remedies on claims of deliberate indifference to serious medical needs. *See e.g.,* Crayton v. Hedgpeth, 2011 WL 1988450, *4 (E.D. Cal. 2011) (cannot exclude the possibility that the plaintiff's appeal addressed and exhausted the plaintiff's claim where the Director's level of review did not deny the plaintiff's appeal until after the alleged incident occurred, motion denied without prejudice to refiling with the proper evidentiary showing if the defendants obtained documents from the plaintiff's appeal that showed the claim was not considered); Passer v. Steevers, 2010 WL 3210850, *7-8 (E.D. Cal. 2010) (inmate appeal challenging the quality of medical care received to date was sufficient to alert the prison to a problem and facilitate its resolution such that fact that inmate appeal filed prior to inappropriate epidural injection prescription seeking surgeries (which were received) but which did not articulate claims regarding the injections sufficed to exhaust claims based on the injections); Victory v. Barber, 2009 WL 2986418, *7-9 (E.D. Cal. 2009) (finding, for purposes of compliance with the Prison Litigation Reform Act of 1995, a claim is exhausted if it is a continuation of a problem raised by a prior fully exhausted inmate appeal, but that claims which were neither considered, nor discussed, by prison officials when raised in second level and

9

Director's level had not been exhausted); Lewis v. Naku, 2007 WL 3046013, *5 (E.D. Cal. 2007) ("[p]risoners are not required to file and exhaust a separate grievance each time they allegedly receive inadequate medical care of an ongoing condition").

### a. Plaintiff's Inmate Appeals

Plaintiff exhausted his claims against Defendants Dr. Nguyen and Dr. Wu for being deliberately indifferent to his serious medical needs.

#### (1) I.A. SATF-02-04423

Plaintiff filed I.A. SATF-02-04423 on August 19, 2002. (Doc. 75-2, Def. Exh. B, pg. 23.) At the informal level, Plaintiff complained of a "chronic HCV with viral load of 8,300,000," the eventual necessity of a liver transplant, that his "liver disease had destroyed [his] digestive system," and that doctors were unable, or unwilling, to prescribe treatment due to budgetary restraints – requesting transfer to "CMF for appropriate acute/chronic care and diet kitchen facilities, and preparation for transplant or death" as SATF could not supply the level of care he needed. (Id.) Plaintiff's appeal to the Director's Level in this I.A. states that "this facility has no available resources to deal with my serious medical needs." (Id. at pg. 24.) The Director's Level Appeal Decision of this I.A. acknowledges Plaintiff's argument that he has liver disease (hepatitis-C) and that he has not received proper treatment. (Id. at pg. 25.)[11] This sufficed to exhaust Plaintiff's administrative remedies on his claim of deliberate indifference to his liver condition.

#### (2) I.A. SATF-02-05072

Plaintiff filed I.A. SATF-02-05072 on September 25, 2002. (Doc. 75-2, Def. Exh. C, pg. 27.) Defendants submitted the first page of this appeal and a copy of Plaintiff's attached page of initial allegations/complaints. The first page of this appeal shows that the informal level and first formal level were bypassed. Defendants failed to submit copies of any of the other levels – particularly the Director's Level Appeal Response to this appeal. Plaintiff's allegations in the 602 form at the informal level addressed, among other medical issues, his need for a liver biopsy,

---

[11] Plaintiff submitted copies of all levels of the review decisions and his appeals at all levels in the CDC appeals process on I.A. SATF-02-04423. (Doc. 160, Plf. Opp., pp. 66-69.)

10

liver specialist, neurosurgeon evaluation, and pain management. (Id.) The declaration of R. Gomez shows that Plaintiff pursued this appeal to the final level by stating that it was denied at the Director's Level. (Id. at pp. 12, 25.) Though Defendants' submission was incomplete, Plaintiff submitted copies of all levels of his allegations (which clearly raised GI/liver and spine/pain claims as well as delays in receipt of medical care) and all review decisions issued under this appeal number (which addressed Plaintiff's claims of requesting, among other things, proper medical treatment by a liver specialist and a neurosurgeon, as well as a liver biopsy and pain management). (Doc. 160, Plf. Opp, pp. 73-82.) This appeal clearly exhausted Plaintiff's administrative remedies for the claims in this action.

### (3) I.A. SATF-02-05818

Plaintiff filed I.A SATF-02-05818 on March 03, 2003. (Id., at p. 96.) Defendants only submitted a copy of the Director's Level Appeal Decision on this appeal,[12] which identified Plaintiff's complaints as including his degenerative disc disease and gag reflux disease, as well as a request to be "permanently unassigned." (Doc. 75-2, Def. Exh. D, pg. 30.) The synopsis therein of the second level noted that follow-up consultations had been made with the neurologist and gastroenterologist. (Id.) The Director's Level Decision denial noted and addressed the medical necessity of health care services to "protect life, prevent significant illness or disability, or alleviate severe pain," and the fact that Plaintiff had seen a neurologist and gastrointerologist "with no follow-up ordered." (Id.) Even without considering all levels of this appeal, the Director's Level Appeal Decision demonstrates that Plaintiff exhausted his administrative remedies for the claims in this action.

### (4) I.A. SATF-03-01347

Plaintiff filed I.A. SATF-03-01347 on November 7, 2002. (Doc. 75-2, Def. Exh. G, pg. 37.) Defendants submitted a copy of the first page of the form and the Director's Level Decision on this appeal. (Id. at pp. 37-40.) At the informal level, Plaintiff states that he has serious health problems including the inability to swallow very well which has prevented him from eating in the

---

[12] Plaintiff submitted copies of all levels of the review decisions and his appeal at all levels in the CDCR appeals process on I.A. SATF-02-05818. (Doc. 160, Plf. Opp., pp. 96-115.)

chow hall for several years. (Id. at p. 37.) Plaintiff states that he experiences pain and nausea when food hits his stomach; his gastrointerologist recommended permanent medical cell feed and medical un-assignment, "which the MAR committee approved," but had not implemented. (Id.) The Director's Level decision noted Plaintiff's position that his condition made him unable to swallow very well and that a gastrointerologist recommended that he be permanently cell fed and medically unassigned. (Id. at pg. 39.)[13] Once again, even without considering all levels of this appeal, the Director's Level Appeal Decision shows that Plaintiff exhausted his administrative remedies for the claims in this action.

### (5) I.A. SATF-03-03706

Plaintiff filed I.A. SATF-03-03706 on July 22, 2003. (Doc. 75-2, Def. Exh. H, p. 42.) At the informal level, Plaintiff complained that Dr. Nguyen refused to discuss referring Plaintiff to a neurosurgeon, neurologist, or gastrointerologist, and refused to evaluate Plaintiff for permanent wheelchair use, medically disabled status, and permanent cell feedings on a special diet, choosing only to discuss a blood test and forcing Plaintiff to leave without any exam, or evaluation. (Id.) Plaintiff requested the C.M.O. to promptly examine, evaluate, and treat him. (Id.) At the first formal level, Plaintiff complained that Dr. Nguyen refused to even listen to him and would not examine him or review any of the specialist reports in Plaintiff's file; Dr. Nguyen merely renewed Plaintiff's medications and told him to "get out." (Id.)[14] Most of Plaintiff's complaints regarding Dr. Nguyen were restated and denied in the Director's Level Appeal Decision. (Id. at pp. 44-45.) Thus, since SATF's inmate appeal process does not prescribe any particular requirements,[15] these allegations in Plaintiff's inmate appeal were sufficient to have alerted

---

[13] Plaintiff submitted copies of all levels of the review decisions, his appeal at all levels, and exhibits he submitted in the CDC appeals process on I.A. SATF-03-03706. (Doc. 160, Plf. Opp., pp. 147-153.)

[14] While these allegations are sufficient in and of themselves, it is noted that Plaintiff made further accusations at this level because his complaints at this level ended in an incomplete sentence and indicated "(See page 2)." Defendants did not submit any such "page 2" in this exhibit. However, Plaintiff submitted copies of all levels of the review decisions, his appeals at all levels (including page 2 at the informal level), and exhibits he submitted in the CDC appeals process on I.A. SATF-03-03706. (Doc. 160, Plf. Opp., pp. 147-153.)

[15] The CDC Inmate Appeal form gives minimal direction to inmates as to specificity requirements of their charging allegations: at the informal level, the inmate appeal formal level says "A. Describe Problem" and "B. Action Requested;" at the first formal level, an inmate is directed to explain his dissatisfaction and attach supporting

12

SATF personnel to the nature of the wrong for which he sought the redress underlying his claims in this action.

Plaintiff was not required to "lay out the facts, articulate legal theories, or demand particular relief." Johnson, 380 F.3d at 697 (*quoting* Strong, 297 F.3 at 650). He was not specifically required to name Dr. Wu and/or Dr. Nyguen or set forth detailed, specific shortcomings in his appeals. Griffin, 557 F.3d at 1120; Jones, 549 U.S. at 200-201. Plaintiff was also not required to file new appeals each time he saw either of the Defendants and received deficient medical care; nor was he required to wait until the last date he received deficient care from Defendants to file an appeal addressing an extended treatment period. *See* Crayton; Passer; Victory; Lewis. Plaintiff's appeals intelligibly objected to the deficiencies of the medical care and treatment which form the basis of this action. It is immaterial that Defendants' allegedly deliberately indifferent care and treatment of Plaintiff continued to occur subsequent to Plaintiff's filing of various appeals on the issue of medical care. Repeated exhaustion of ongoing inadequate medical care is not required.

Defendants Dr. Wu and Dr. Nyguen have not proven that Plaintiff failed to exhaust his administrative remedies as to his claim(s) of deliberate indifference against them. In fact, the evidence submitted shows that Plaintiff exhausted his administrative remedies on the claims raised in this action. Thus, Defendants' motion to dismiss Plaintiff's claims of deliberate indifference to his serious medical needs by Defendants Dr. Wu and Dr. Nyguen should be denied with prejudice.

## II. **RECOMMENDATIONS**

The Court finds that Defendants Dr. Nguyen and Dr. Wu are not entitled to dismissal of Plaintiff's claims based on failure to exhaust administrative remedies under Rule 12(b); rather, Plaintiff exhausted the available administrative remedies on his claims in this action.

///

---

documents; at the second formal level, if dissatisfied, an inmate is directed to explain the reasons for requesting a Second-Level Review; at the final formal level, if dissatisfied, an inmate is directed to add data or reasons for requesting a Director's Level Review. (*See e.g.* Doc. 75-2, Def. Exh. H, pp. 42-43.)

13

Based on the foregoing, it is HEREBY RECOMMENDED that the Motion to Dismiss under Federal Rule of Civil Procedure 12(b), filed December 3, 2010 (Doc. 151), seeking dismissal of Plaintiff's claims against Defendants Dr. Nguyen and Dr. Wu, be DENIED WITH PREJUDICE.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: June 29, 2011**              /s/ Sheila K. Oberto
                                      UNITED STATES MAGISTRATE JUDGE